Margaret ARNOLD and Travis G. Arnold, Appellants,

v.

CITY OF CEDAR RAPIDS, Iowa, and Cedar Rapids Amateur Softball Association, Inc., Appellees.

No. 88–593.

Supreme Court of Iowa.

July 19, 1989.

Amanda Potterfield and Jerry Zimmerman of Joe Johnston Law Firm, P.C., Cedar Rapids, for appellants.

John C. Monroe, Cedar Rapids, for appellee Cedar Rapids Amateur Softball Ass'n, Inc.

Wayne C. Collins of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee City of Cedar Rapids.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO and SNELL, JJ.

HARRIS, Justice.

The trial court determined there could be no liability in this suit brought by a spectator at an athletic event. Plaintiff was injured when hit by a thrown ball. We affirm.

Plaintiff Margaret Arnold [1] was a spectator at a softball game in Cedar Rapids. Her husband, Travis Arnold, was a team member, participating in the game. Defendant City of Cedar Rapids owns the softball facility. The softball league is operated by defendant Cedar Rapids Amateur Softball Association, Inc.

The facility is a conventional one for playing softball. There is a screen behind home plate and bleachers behind the screen. The bleachers where plaintiff sat had been removed from behind the screen by other spectators. Had she chosen to sit there, space was available to plaintiff in the fully protected stands behind home plate. She chose however to sit in the open bleachers along the first base line, protected only by a three-foot fence. While sitting there she was injured when hit in the face by a misthrown ball.

After plaintiff brought this action for her injuries both defendants moved for summary judgment. The trial court determined

---

**1.** Her husband, Travis Arnold, jointly filed a loss of consortium claim. For simplicity we refer to Margaret as if she were the sole plaintiff.

that both defendants had discharged any duties owed to the plaintiff and sustained the motions.

I. In summary judgment matters the trial court's findings are not findings of fact, but are decisions on questions of law. *Brubaker v. Barlow*, 326 N.W.2d 314, 315 (Iowa 1982). The burden of showing the nonexistence of a material fact is upon the moving party. *Jones v. Des Moines Civil Serv. Comm'n*, 430 N.W.2d 106, 107 (Iowa 1988). The record is examined in the light most favorable to the party opposing the motion. *Id.* Summary judgment is not proper if reasonable minds can draw different inferences and conclusions from the undisputed facts. *Id.*

II. In stating the controlling question the parties label it as one involving assumption of risk. Such a characterization has become increasingly inappropriate and misleading. In *Rosenau v. City of Estherville*, 199 N.W.2d 125, 133 (Iowa 1972), we abolished assumption of risk as a separate defense in all cases in which contributory negligence is available as a defense. We distinguished what then seemed appropriate to call primary assumption of risk. *Id.* at 131–33.

It increasingly became apparent that primary assumption of the risk was an inaccurate term. As we explained in *Nichols v. Westfield Industries, Ltd.*, 380 N.W.2d 392 (Iowa 1985):

> Primary assumption of the risk is not an affirmative defense. It is "an alternative expression for the proposition that defendant was not negligent, *i.e.*, either owed no duty or did not breach the duty owed." It is based on the concept that a plaintiff may not complain of risks that inhere in a situation despite proper discharge of duty by the defendant. Primary assumption of risk is merely a label for denying that a duty existed or that a duty was breached.

*Id.* at 399 (citations omitted).

■ Assumption of risk is not a complete defense under the comparative fault Act. Iowa Code section 668.1 (1989) provides that fault includes "unreasonable as-

sumption of risk not constituting an enforceable express consent."

Our post-*Rosenau* references to primary assumption of risk, even under the comparative fault Act, remain viable. *See Chapman v. Craig*, 431 N.W.2d 770, 771 (Iowa 1988). But, for accuracy and clarity, it is preferable, as suggested in *Nichols*, to frame the issue in terms of whether a duty is owed.

■ III. The principle seems well established that the owner or operator of a ballpark fully discharges any obligation to protect spectators from thrown or hit balls by providing seating in a fully protected area. Where a spectator rejects the protected seating and opts for seating that is not, or is less, protected the owner or operator is not liable. *See* Annotation, *Liability to Spectator at Baseball Game Who is Hit by Ball or Injured as Result of Other Hazards of Game*, 91 A.L.R.3d 24, 31–32 (1979).

Cases in jurisdictions which have adopted comparative fault have come to the same conclusions. In *Neinstein v. Los Angeles Dodgers, Inc.*, 185 Cal.App.3d 176, 184, 229 Cal.Rptr. 612, 616 (1986), the court used the concept of consent to affirm a summary judgment on the part of the baseball park owner. In *Akins v. Glens Falls City School District*, 53 N.Y.2d 325, 441 N.Y. S.2d 644, 424 N.E.2d 531, 532–33 (1981), the court re-examined the law in the area due to the adoption of comparative fault. A two-prong test regarding the duty of the owner was adopted. The proprietor need only provide screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest. Moreover, such screening must be of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game. A similar result was reached in the case of *Swagger v. City of Crystal*, 379 N.W.2d 183, 186 (Minn.Ct.App.1985).

■ The defendants here screened the most dangerous parts of the spectator stands, behind home plate. There was sufficient seating there for this plaintiff. De-

fendants owed her nothing further. Summary judgment was properly granted.

AFFIRMED.